ORDERED.

Dated: March 02, 2018

_Karen S. Jennemann_
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) ) ANDREW BRUCE MIGELL, ) ) Debtor. ) _____ ) ) ALICE E. MIGELL, ) ) Plaintiff, ) ) vs. ) ) ANDREW BRUCE MIGELL, ) ) Defendant. ) ) _____ ) | Case No. 6:15-bk-10569-KSJ Chapter 7 Adversary No. 6:16-ap-00118-KSJ |

**MEMORANDUM OPINION PARTIALLY GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Alice E. Migell (the "Plaintiff/Mother"), seeks summary judgment that two state court judgments are non-dischargeable under § 523(a)(2), (4), and (6)[1] of the Bankruptcy Code, and that the Debtor, her son, is not entitled to a discharge under § 727(a)(2)(A), (B), and (a)(7) of the Bankruptcy Code. After reviewing the evidence, arguments of the parties, and applicable law, the

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et seq.*

1

Court will partially grant the Motion finding two state court judgments (*Guardian v. Migell*, No. 9E-0089; *Guardian v. Migell*, No. 10E-0099, the "Judgments") non-dischargeable based on collateral estoppel. A factual dispute exists on whether the Debtor should be denied a discharge based on his alleged attempt to hide a valuable asset of the estate during his prior bankruptcy.

Plaintiff is the Debtor's mother and has been involved in several cases against the Debtor before the Probate and Family Court of Massachusetts, Middlesex Division (the "Probate Court"). She was born on May 29, 1932, resides at a nursing facility, and has a history of physical and mental illness. Acting through her guardian, she obtained the Judgments against the Debtor holding that he fraudulently transferred five parcels of real property, in which she was the primary beneficiary under her late husband's estate. The Judgments were affirmed on appeal.

Plaintiff recovered money in Case No. 9E-0089 (the "First Case"), but before a state court receiver could liquidate assets to recover judgment in Case No. 10E-0099 (the "Second Case"), the Debtor's first bankruptcy petition was filed on December 22, 2014. The case was dismissed based upon a settlement.

Debtor filed this second bankruptcy on November 21, 2016. Plaintiff now moves for summary judgment and argues there are no issues of material fact, and states collateral estoppel, also known as issue preclusion, applies to the Judgments making the liability owed to her non-dischargeable under § 523(a)(2), (4), and (6) of the Bankruptcy Code. The Court agrees.

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The moving party must establish the right to summary judgment.[3] A "material" fact is one that "might affect the outcome of the suit under the governing law."[4] A "genuine"

---

[2] Fed. R. Civ. P. 56(a).
[3] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Find What Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] Once the moving party has met its burden, the nonmovant must set forth specific facts showing there is a genuine issue for trial.[6] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[7]

Plaintiff argues collateral estoppel applies to the Judgments. "Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior action. The principles of collateral estoppel apply in discharge proceedings in a bankruptcy court."[8] The United States Court of Appeals for the Eleventh Circuit has held that "the collateral estoppel law of that state must be applied to determine the judgments preclusive effect."[9]

Under Massachusetts law, for a party to be estopped from relitigating an issue regarding the dischargeability of a debt, these four elements must be present: "(1) there was a valid and final judgment on the merits; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment."[10]

There is no dispute the second element, requiring that the party against whom estoppel is asserted was a party to the prior litigation, is met because the Debtor was a party in both the First and Second Case. There is also no dispute the first element, requiring a valid and final judgment on the merits, is satisfied in the First Case because the judgment was rendered after a trial and affirmed on appeal. Debtor argues the Second Case was not decided on the merits because the Probate Court entered the judgment by default. Under Massachusetts law, default judgments

---

[5] *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.
[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348 (1986).
[7] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).
[8] *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319, 1322 (11th Cir. 1995).
[9] *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675–76 (11th Cir. 1993).
[10] *Alba v. Raytheon Co.*, 441 Mass. 836, 842 (2004).

usually are not given collateral estoppel effect when the party did not have the opportunity to litigate the matter. The Supreme Judicial Court of Massachusetts and federal courts, however, have recognized an exception to this rule where "the party actively or substantially participated in the proceedings prior to the entry of a default judgment."[11]

According to the Supreme Judicial Court of Massachusetts, there are "circumstances in which a litigant may so utilize our court system in pretrial procedures, but nonetheless be defaulted for some reason, that the principle and rationale behind collateral estoppel would apply."[12] In *Backlund v. Stanley-Snow,* the United States Bankruptcy Appellate Panel of the First Circuit found that collateral estoppel applied to a default judgment where the debtor filed an answer and participated extensively in the state court litigation for years.[13] Other federal courts also have found collateral estoppel is appropriate where the party avoided participating as part of a litigation tactic.[14] In *Bush v. Balfour Beatty Bahamas*, the Eleventh Circuit found that collateral estoppel applied where the debtor participated in litigation for a year but defaulted after failing to appear to depositions, produce documents, and attend a pre-trial conference.[15]

Here, the Court finds the second element is met in the Second Case and that collateral estoppel applies to the default judgment because the Debtor had the opportunity to litigate but chose not to participate. The default judgment was entered in the Second Case after the Debtor failed to appear to a mandatory pre-trial conference in which the scheduling order provided that the "failure to appear at the [conference] may result in…the entry of a default." The judgment, which was affirmed on appeal,[16] shows that the Debtor had not only participated in the litigation

---

[11] *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 20 (B.A.P. 1st Cir. 2009).
[12] *Id.* (citing *Treglia v. MacDonald*, 430 Mass. 237, 241, 717 N.E.2d 249, 253 (1999)).
[13] *Stanley-Snow*, 405 B.R. at 20; *see also Sidney v. Ragucci (In re Ragucci)*, 433 B.R. 889, 892 (Bankr. M.D. Fla. 2010) (finding collateral estoppel applied to default judgment where *pro se* debtor had substantially opportunity to participate in litigation).
[14] *See*, *e.g.*, *Bush*, 62 F.3d at 1324; *Lawson v. Jubelt (In re Jubelt)*, Adversary No. 09-01498, 2012 WL 4738631, at *9 (Bankr. S.D.N.Y. Oct. 3, 2012) (Stating the Fifth Circuit has recognized "ordinary no-answer default judgments were not given preclusive effect, whereas post-answer default judgments were considered actually litigated and were, therefore, accorded preclusive effect.")
[15] *Bush,* 62 F.3d at 1322.
[16] Doc. No. 28, Ex. 7.

4

for years, but that the default was entered seven months after the Debtor filed an answer to his Mother's complaint on November 17, 2010. Debtor cannot oppose the preclusive effect of the judgment from the Second Case when he was an active litigant but simply decided to stop participating and allow the judgment to enter by default.

Evidence in the record shows the Debtor's history of avoiding participation in lawsuits is an ongoing litigation tactic. The Probate Court, for instance, found the Debtor and his wife guilty of civil contempt on May 4, 2009, September 23, 2009, and January 8, 2010. Debtor also was found guilty of criminal contempt on June 15, 2010. According to the Probate Court, the Debtor and his wife routinely and willfully:

> (1) violated numerous court orders of the Court; (2) ignored discovery requests; (3) attempted to evade service of process; (4) failed to appear at mandatory hearings; (5) engaged in tactics designed to frustrate and significantly delay [the conservator and guardian's] execution of his duties; and (6) engaged in wrongly and fraudulent activities designed to separate [Plaintiff] from her assets and render such assets difficult to identify and recapture, thereby necessitating significant investigation and litigation.

Plaintiff has satisfied the first and second elements of the collateral estoppel test.

The Court now turns to whether the Judgments satisfy the third element of collateral estoppel, which requires a finding that the issue in the prior adjudication is identical to the issue in the current litigation, and the fourth element, requiring that the issue in the prior litigation was essential to the earlier judgment. Under § 523(a)(2)(A) of the Bankruptcy Code, a debt is nondischargeable to the extent it was obtained by "false pretenses, a false representation, or actual fraud." Debtor argues collateral estoppel is not applicable because there was no finding of fraud, embezzlement, breach of fiduciary duty, or undue influence. Similarly to this case, in *Stanley-Snow*, the debtor stated because the judgment was entered by default, the essential elements to establish a finding under § 523(a)(2)(A) – fraud, false representations/pretenses – were not actually

litigated.[17] The Bankruptcy Appellate Panel of the First Circuit first looked at the elements to find a debt is nondischargeable based on fraud or false representation, which include a showing that:

> (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage.[18]

The Court then found that, for purposes of non-dischargeability, even where an issue is not explicitly decided, "collateral estoppel is appropriate where…the record so amply support the state court's conclusions…based on the debtor's fraudulent conduct."[19] In *Stanley-Snow*, the state court made numerous factual findings supporting the conclusion that the judgment was based on the debtor's fraudulent conduct.[20]

Here, although the judgement in the Second Case was entered by default, the record supports the conclusion it was based on the Debtor's fraudulent conduct of transferring properties for his own benefit. According to the Probate Court, the Debtor and his wife "engaged in continuous, willful campaign of fraudulent, obstructionist behavior designed to separate [Mother] from her assets which should have been available to cover the cost of her 24-hour care necessary for the preservation of her mental and physical well-being."[21]

Debtor ignored his Mother's numerous demands requesting the return of 1014 Beacon Street. The property "should have been immediately available for [Mother's guardian] to sell and fund [Mother's] necessary medical and nursing home care…however, due to [Debtor's] obstructionist conduct, [Mother]…had to perform voluminous and complex work in order to simply obtain good title to the property."[22] Even after Mother obtained title to the property, "[Debtor] engaged in further obstructionists tactics to frustrate and delay its sale, despite that

---

[17] *Stanley-Snow*, 405 B.R. at 19-21.
[18] *Id.* at 21.
[19] *Id.* at 22.
[20] *Id.* at 23.
[21] Doc. No. 28, Ex. 7.
[22] *Id.*

6

[Mother] was at risk of losing her nursing home payment." The finding that the Debtor fraudulently transferred properties to himself to his Mother's detriment, is identical to the issue before this Court; and was essential to the judgment in the Second Case, which was issued after the Probate Court calculated damages at a trial. The Court, therefore, finds that the third and the fourth elements are satisfied in the Second Case under § 523(a)(2)(A), and that the judgment from the Second Case is not dischargeable.

Further, the judgment in the First Case was rendered after a trial where the Probate Court heard the testimony of many witnesses including the Mother's primary care physician and her guardian *ad litem,* who had interviewed various members of the Mother's family.[23] The action was filed by Mother's guardian and conservator to recover the five properties the Debtor had transferred through undue influence while occupying a position of fiduciary. Debtor and his wife, Kai Sun, did not personally appear for the four trials but were represented by an attorney. The Probate Court found that the Debtor "intentionally interfered with Mother's interest in her marital estate by diverting Father's properties beyond the reach of his probate estate,"[24] and that "but for [Debtor's] fraud and undue influence on Father, Mother would have received the benefit of the subject properties as a Trust beneficiary."[25]

The Appeals Court of Massachusetts affirmed the entire judgment in the First Case except for the transfer of one property in Florida. According to the Court of Appeals, for the most part, "the judge's finding of undue influence was not clearly erroneous" and the "[Debtor's] manner of interference was unlawful as to [Father] in that he exercised undue influence in obtaining the transfer to himself of the beneficial interest in the trust."[26] Regarding the Florida property,

---

[23] Doc. No. 28, Ex. 1.
[24] Doc. No. 28, Ex. 2.
[25] *Id.*
[26] Doc. No. 28, Ex. 4.

however, the Court of Appeals found there was no breach of fiduciary duty because the property was not held in a trust in which the Debtor was a trustee.

In his Response to Plaintiff's instant Motion for Summary Judgment, the Debtor, quoting parts of the decision, argues the appeal does "not support plaintiff's allegations of fraud, fiduciary duty or undue influence." Debtor, however, disingenuously quotes mostly the part reversed – the portion addressing the Florida property. The rest of the Judgment in the First Case was affirmed including the finding that the Debtor fraudulently converted four properties through undue influence while in a position of fiduciary.[27] Because the Probate Court's finding that the Debtor acted fraudulently while in the position of a fiduciary was essential to the judgment and is the identical to the issue in this adversary proceeding, the third and fourth elements of collateral estoppel are also met, and the judgment entered in the First Case is not dischargeable pursuant to § 523(a)(2)(A).

Plaintiff also argues the Judgments are not dischargeable under § 523(a)(4), which provides that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Fiduciary capacity is defined by federal law as "an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt."[28] To establish fraud while acting in a fiduciary capacity, one must show:

> (1) that the debt 'result[s] from a fiduciary's defalcation under an express or technical trust;' (2) that the debtor 'acted in a fiduciary capacity with respect to the trust;' and (3) that the transaction in question is a defalcation [or fraud] within the meaning of bankruptcy law.[29]

Here, the Court finds the third and fourth element of collateral estoppel, requiring the issue in the previous litigation to be identical to the issue in the current litigation and requiring the issue

---

[27] *See id.*
[28] *Stallworth v. McBride (In re McBride),* 512 B.R. 103, 113 (Bankr. D. Mass. 2014)).
[29] *Raso v. Fahey (In re Fahey),* 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012)).

in the prior litigation to be essential to the earlier judgment, are satisfied in the judgment entered in the First Case. It is not dischargeable under § 523(a)(4).

The Probate Court in the First Case found that the Debtor and his wife stood in a fiduciary relationship to parents "occupying the roles Mother's Durable Power of Attorney…self-proclaimed financial advisor… property manager of commercial rental property…and as trustee of various family and residential realty trusts of whom Mother and Father were the primary beneficiaries."[30] The Probate Court then found that the Debtor used his position for self-enrichment knowing his parents relied on him, and that the disposition of the properties for the benefit of the Debtor was unnatural, "given his parents detailed estate plan to benefit the surviving spouse, Mother's diminished mental health and dependency on [the Debtor] and his wife, and the father's "susceptibility to coercion and undue influence."[31] After finding that the Debtor fraudulently converted the properties, the Probate Court removed the Debtor from his fiduciary roles based upon his "egregious breach of his fiduciary duties."[32]

The Appeals Court of Massachusetts affirmed part of the judgment relating to the properties held in the trust in which the Debtor was the actual trustee. In those instances, according to the court, there was a clear breach of fiduciary duty where the Debtor "obtained undue influence in obtaining the transfer to himself of the beneficial interest in the trust."[33]

Plaintiff further argues the Judgments are not dischargeable under § 523(a)(6), which provides debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are excepted from discharge. Injury alone is not sufficient and intent to cause the injury is required.[34] In *In re Monson*, the Eleventh Circuit affirmed the decision of a bankruptcy court that a debtor's debts were not discharged under § 523(a)(6) where the debtor "knew that his

---

[30] Doc. No. 28, Ex. 2.
[31] *Id.*
[32] *Id.*
[33] Doc. No. 28, Ex. 4.
[34] *Mancinelli v. Carchidi (In re Carchidi)*, Adversary Nos. 14-1072 and 14-1073, 2015 WL 3609342, at *17 (Bankr. D. Mass. June 8, 2015).

actions were at least substantially certain to cause injury to [the Creditor's] ability to seek repayment of its loan." The Eleventh Circuit held that a debtor acts willfully when "he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."[35]

Here, the Court finds the Judgments are not dischargeable under § 523(a)(6) because the third and the fourth elements of collateral estoppel, requiring the issue in the previous litigation to be identical to the issue in the current litigation and requiring the issue in the prior litigation to be essential to the earlier judgment, are satisfied. In the Judgments, the Probate Court's findings of fact indicate the Debtor was conscious of his wrongdoing and acted knowing his actions would deprive the Mother of her beneficial interest in the trust. The findings were also essential to the Judgments in favor of the Mother.

In the First Case, for example, the Probate Court found "[Debtor] intentionally interfered with Mother's Interest in her marital estate by diverting Father's properties beyond the reach of his probate estate….But for [Debtor's] fraud and undue influence on Father, Mother would have received the benefit of the subject properties as a Trust beneficiary."[36] Similarly, in the Second Case, the Probate Court stated that the case "represents the tragic story of a son who, along with his wife, set out on a ruthless campaign to totally and utterly deprive his elderly, ailing, and recently widowed mother of her entire estate. [Debtor and his wife] have not only behaved deplorably toward [Mother], they have also engaged in a willful and continuous pattern of some of the most shockingly obstructionist behavior ever seen before this court."[37]

Plaintiff also argues the Debtor should be denied a discharge under § 727(a)(2)(A), (B), and (a)(7) because, during his prior bankruptcy, the Debtor attempted to hide a valuable asset of

---

[35] *Monson v. Galaz (In re Monson)*, 661 Fed. App'x. 675 (2016); *see also Trenwick Am. Reins. Corp and Unum Life Ins. v. Swasey (In re Swasey)*, 488 B.R. 22, 39 (Bankr. D. Mass. 2013) (A "debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)").
[36] Doc. No. 28, Ex. 2.
[37] Doc. No. 28, Ex. 7.

10

his estate, and out of Plaintiff's reach, by falsely claiming he no longer had an interest in a property. Section 727(a)(2)(A) and (B) provides a debtor should not receive a discharge if the debtor with intent to hinder, delay, or defraud a creditor has transferred, destroyed, mutilated or concealed "A) property of the debtor, within one year before the date of the filing of the petition; or B) property of the estate, after the date of the filing of the petition."

Debtor contests Plaintiff's argument of fraud and states that the prior bankruptcy was voluntarily dismissed because of a settlement agreement. The Court finds that a factual dispute on whether the Debtor, in his prior bankruptcy, transferred, destroyed, mutilated or concealed property with the intent to hinder, delay, or defraud a creditor prevents resolution of the Debtor's dischargeability as a matter of law.

Accordingly, it is

**ORDERED:**

1. Judgment in *Guardian v. Migell*, No. 9E-0089 is not dischargeable under 11 U.S.C. § 523(a)(2), (4), and (6).

2. Judgment in *Guardian v. Migell*, No. 10E-0099 is not dischargeable under 11 U.S.C. § 523(a)(2) and (6).

3. Factual disputes prevents resolution of whether the Debtor is entitled to a discharge under § 727.

4. A pretrial conference is scheduled **for 2:45 p.m. on March 8, 2018,** in Courtroom 6A on the Sixth Floor, 400 W. Washington Street, Orlando, Florida, 32801 to discuss how to resolve the remaining § 727 counts.

###

Attorney Robert J. O' Regan is directed to serve a copy of this order on all interested parties and file a proof of service within 3 days of entry of the order.